## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| ALLEN MURPHY, | CASE NO. 1:23-cv-00581 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| KENNETH BLACK, WARDEN, | **REPORT & RECOMMENDATION** |
| Respondent. | |

Petitioner Allen Murphy ("Petitioner" or "Mr. Murphy") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his convictions for rape, kidnapping, and disseminating matter harmful to juveniles in Cuyahoga County Court of Common Pleas, Case No. CR604041. (ECF Doc. 1 ("Petition").) Mr. Murphy filed his Petition with the assistance of counsel on March 20, 2023. (*Id.*) The matter was referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. Respondent filed an Answer/Return of Writ (ECF Doc. 7), and Petitioner filed a Traverse (ECF Doc. 10).

For the reasons set forth herein, the undersigned recommends that the Court **DENY** Grounds One and Three on the merits, **DISMISS** Ground Two with prejudice as procedurally defaulted, and **DISMISS** Ground Four with prejudice as not cognizable.

### I.    Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the

1

burden of rebutting that presumption by clear and convincing evidence. *Id.*; *Railey v. Webb*, 540

F.3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Mr.

Murphy's conviction and sentence as follows:

{¶2} The victim of the offenses, Murphy's stepdaughter Jane Doe ("Doe"), was nine years old at the time of the October 2016 incident and 11 years old at the time of the August 27, 2018 trial. Doe did not tell anyone about the interaction until visiting family in April 2017.

. . .

{¶18} Doe testified that in October 2016, her mother was not at home when Murphy told Doe to enter the bedroom. Doe's siblings were in the other room.[] Murphy closed and locked the door, removed Doe's clothing and then removed his own. Doe next stated that Murphy's "front area" "private part" that is used to "pee" "went into" "her front area" that is "used to pee." (Tr. 393-394.) Next, Murphy's "private part" went into "my back private part" and Doe could feel Murphy's hands on her "butt cheeks" "spreading them apart." (Tr. 394.) Doe stated that she was standing during the first two acts but that she was laying on the bed when Murphy began "licking my front part." (Tr. 395.)

{¶19} Doe testified that "white stuff * * * was like all over my face and kind of in my mouth a little" that came from Murphy's "private part." (Tr. 405.) Murphy "wiped it off" with a wipe. (Tr. 405.) Doe also testified that, in October 2016 and "on different days," Murphy showed pornographic videos to Doe while in the bedroom. The videos were viewed on Murphy's cell phone and showed nude men and women "being on each other" and "licking each other and kissing each other and stuff." (Tr. 397-398.)

{¶20} Doe also testified that she did not tell the social workers or anyone else that the events were like a dream. Doe's statements to Portage County Social Worker Alexandra Toth ("Toth"), Cleveland sex crimes unit Detective Cynthia Adkins ("Det. Adkins") and Dr. Phil McPherson ("Dr. McPherson") of Akron Children's Hospital were consistent with Doe's testimony.

{¶21} A week after Doe revealed the incident to her father's girlfriend and paternal grandmother, Doe was interviewed by social worker Toth with Portage County Children's Services. Toth testified that Doe told Toth that Murphy "touched her privates" and showed "her [adult] videos on his phone" depicting "naked * * * girls licking girls' privates and girls sucking boy's privates." (Tr. 260.) Doe also told Toth about the cunnilingus, anal and vaginal penetration, and that Murphy wiped

off the "white stuff" off of her face that was emitted by Murphy's "private." (Tr. 262.)

{¶22} Toth and a detective went to Doe's house and informed Doe's mother of the allegations. The mother and Murphy were instructed that he could not reside in the home during the investigation. The social services agency subsequently discovered that the mother allowed Murphy to return to the home without agency or police permission.

{¶23} Toth took Doe to Akron Children's Hospital where she was examined by Dr. McPherson who was specially trained in child sexual abuse cases. The examination took place in April 2017, approximately sixth months after the incident. No genital abnormalities were found. Dr. McPherson opined that "[i]n my years of doing this as well as in the medical literature, and it sounds surprising, but in most cases of child sexual abuse, physical exam findings of the genital area and the anal area are normal." (Tr. 318.) Toth observed the interview through a one-way mirror and testified that Doe's statement to Dr. McPherson was consistent, though more detailed, than her interview with Toth.

*State v. Murphy*, 2019-Ohio-4347, ¶¶ 2, 18-23, 32, 2019 WL 5457936, **2-7 (Ohio Ct. App. Oct. 24, 2018); (ECF Doc. 7-1, pp. 127, 134-36.)

## II.    Procedural Background

### A.    State Court Conviction

On February 1, 2018, a Cuyahoga County Grand Jury issued an indictment charging Mr. Murphy with three counts of rape[1] (O.R.C. § 2907.02(A)(1)(b)) (Counts 1, 2, 3), one count of kidnapping (O.R.C. § 2905.01(A)(4)) (Count 4), and one count of disseminating matter harmful to juveniles (O.R.C. § 2907.31(A)(1)) (Count 5). (ECF Doc. 7-1, pp. 7-9.)   Mr. Murphy pleaded not guilty to the indictment. (*Id*. at p. 11.)

The case proceeded to a jury trial on August 27, 2018, continuing through jury verdict on September 6, 2018. (ECF Doc. 7-1, p. 15; ECF Docs. 7-2, 7-3, 7-4, 7-5.) Mr. Murphy was found guilty on all five counts. (ECF. Doc. 7-1, p. 15.) He moved for acquittal or a new trial,

---

[1] At the state's request, the court later amended Count 3 to delete the language "who was under thirteen years of age but ten years or older at the time of the commission of the offense, to wit: DOB 5/15/2007." (ECF Doc. 7-1, p. 13.)

arguing that the verdict was against the manifest weight of the evidence (*id*. at pp. 17-21), and the trial court denied the motion as moot at sentencing (*id*. at p. 27).  On September 27, 2018, the trial court sentenced Mr. Murphy to: 15 years to life on Counts 1 and 2; 25 years to life on Count 3; and 18 months on Count 5, ordering that Count 4 merge with Counts 1-3 at the State's request. (*Id*. at p. 26.)  The sentence carried up to three years of discretionary post-release control, and Mr. Murphy was designated a Tier III child victim sex offender.  (*Id*.)  His subsequent appeals, motions, and petitions for post-conviction relief were filed through counsel.

**B.      Direct Appeal**

Mr. Murphy filed a notice of appeal with the Eighth District Court of Appeals on October 23, 2018.  (ECF Doc. 7-1, p. 29.)  He filed his appellate brief on March 12, 2018 (*id*. at pp. 37-82), raising the following assignments of error:

1.      Mr. Murphy's convictions are based on insufficient evidence where the government's primary witness "really does not know" whether the incident charged actually occurred.

2.      The appellant's convictions are against the manifest weight of the evidence.

3.      Appellant was denied a fair trial where the doctor was permitted to testify that he diagnosed the alleged victim as a victim of sexual abuse.

4.      The appellant was denied a fair trial where the government elicited testimony that its social worker found the underlying allegations to be "substantiated."

5.      The trial court erred in not allowing appellant to develop the fact that Jane's stepmother had a history of speaking with young children about sexual matters.

6.      The trial court erred in allowing the government to introduce evidence of appellant's willingness to take a polygraph test and then impeach that same statement.

7.      The trial court erred in allowing the government to introduce statements on whether appellant viewed pornography on his cellular phone and then impeach that same statement.

4

8.      Mr. Murphy was denied the effective assistance of trial counsel.

9.      Appellant was denied a fair trial when he was precluded from cross-examining the government's expert about prior sexual abuse of the alleged victim.

(*Id*. at pp. 39-40.)  The State filed its brief in opposition on May 13, 2019.  (*Id*. at pp. 84-109.)

The appeals court affirmed the trial court's judgment on October 24, 2019.  (*Id*. at pp. 126-63.)

On December 9, 2019, Mr. Murphy filed a notice of appeal with the Supreme Court of Ohio (*id*. at pp. 165-66) and a memorandum in support of jurisdiction (*id*. at pp. 168-84).  He raised the following propositions of law:

1.      A conviction is based on insufficient evidence where the only eyewitness "really does not know" whether the incident charged actually occurred.

2.      A witness may not testify that alleged victim of a sex offense was diagnosed as sexually abused without the finding of physical evidence that substantiates the allegations.

3.      Evidence that a social worker made a preliminary determination that an alleged victim was in fact victimized is not admissible evidence in a criminal trial.

4.      Ohio's Rape Shield law prohibition of "specific instances of the victim's sexual activity" applies only to consensual sex or whether it also prohibits questions related to sexual abuse.

5.      The state may not introduce extra-judicial statements of an accused and then impeach those same statements.

6.      Mr. Murphy was denied the effective assistance of counsel at trial.

(*Id*. at p. 169.)  The State filed a memorandum opposing jurisdiction on January 8, 2020.  (*Id*. at pp. 186-200.)  On February 18, 2020, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Murphy's appeal.  (*Id*. at p. 202.)

**C.**     **Petitions for Post-Conviction Relief**

On December 3, 2019, Mr. Murphy, through counsel, timely filed a petition to vacate or set aside his judgment or sentence pursuant to O.R.C. § 1953.21.[2] (ECF Doc. 7-1, pp. 205-15.) He raised three claims for relief: (1) actual innocence based on the victim recanting her rape allegation (*id*. at pp. 206-07); (2) an alleged violation of *Brady v. Maryland,* 373 U.S. 83 (1963) based on the state failing to disclose that the victim attempted to recant her allegations before trial (*id*. at pp. 207-10); and (3) ineffective assistance of trial counsel (*id*. at pp. 210-13).  The State opposed the petition.  (*Id*. at pp. 217-34.)  On December 21, 2020, the trial court dismissed Mr. Murphy's petition for post-conviction relief, finding his actual innocence and *Brady* claims were without merit and his ineffective assistance of counsel claims were barred by the doctrine of res judicata as they could have been raised on direct appeal.  (*Id*. at pp. 236-41.)  Mr. Murphy timely filed a notice of appeal to the Eighth District Court of Appeals.  (*Id*. at pp. 243-44.)

While Mr. Murphy's appeal from the 2019 petition was pending, he filed a consolidated motion in the trial court seeking leave to file a motion for a new trial and/or motion to reconsider the court's order denying his petition for post-conviction relief under seal.  (*Id*. at pp. 340-41.) The trial court denied this motion subject to reconsideration and ordered Mr. Murphy to file the victim's statement with the court.  (*Id*. at p. 343.)  On March 18, 2021, Mr. Murphy filed a renewed/revised motion for leave to file a motion for a new trial under seal.  (*Id*. at pp. 346-47.) He withdrew his request that the trial court reconsider its December 21, 2020 order.  (*Id*.)

On March 24, 2021, Mr. Murphy again requested leave to file a motion for a new trial in the trial court.  (*Id*. at pp. 349-59.)  On April 1, 2021, he filed a successive petition for post-

---

[2] Respondent notes in the Return of Writ that certain documents submitted in support of this petition were not included in the state court record, presumably because they were filed under seal.  (ECF Doc. 7, pp. 6-7, n. 3.)

conviction relief.  (*Id*. at pp. 408-18.)  Both filings asserted the same actual innocence/*Brady*

arguments raised in his 2019 petition.  (*See id*. at pp. 355-58, 415-17.)  On April 1, 2021, Mr.

Murphy also filed a motion for remand with the Eighth District Court of Appeals so that the trial

court could rule on his motion for leave to file a motion for a new trial and his successive

petition for post-conviction relief.  (*Id*. at pp. 261-63.)  The appellate court issued a limited

remand to allow the trial court to rule on these filings.  (*Id*. at pp. 335, 337.)  The State opposed

Mr. Murphy's successive petition for post-conviction relief (*id*. at pp. 469-98), and his motion

for leave to file a motion for new trial (*id*. at pp. 502-32).

On May 3, 2021, the trial court summarily denied Mr. Murphy's motion for leave to file a

motion for new trial and successive petition for post-conviction relief.  (*Id*. at p. 535.)  Mr.

Murphy timely appealed this denial to the Eighth District Court of Appeals (*id*. at pp. 538-39)

and, upon Mr. Murphy's motion, the Eighth District consolidated this appeal with the appeal

from the denial of Mr. Murphy's first petition for post-conviction relief (*id*. at pp. 547-49, 551).

On June 21, 2021, Mr. Murphy filed a brief in his consolidated appeal (*id*. at pp. 554-75),

raising one assignment of error:

1. The trial court violated Allen Murphy's state and federal constitutional rights
   when it summarily denied his petition and successor petition for post-conviction
   relief and delayed motion for a new trial.

(*Id*. at p. 555).  The State filed a brief in opposition.  (*Id*. at pp. 577-620.)  On November 4, 2021,

the Eight District Court of Appeals affirmed the trial court's judgment.  (*Id*. at pp. 623-38.)  *See*

*State v. Murphy*, 2021-Ohio-3925, 2021 WL 5137003 (Ohio Ct. App. Nov. 4, 2021).

Mr. Murphy filed a timely notice of appeal with the Supreme Court of Ohio (ECF Doc. 7-

1, pp. 640-41) and a memorandum in support of jurisdiction (*id*. at pp. 643-58).  He raised one

proposition of law:

1. To the extent that Crim. R. 33, R.C. 2953.21 and R.C. 2953.23 limit the filing of post-conviction motions based on newly discovered evidence, any analysis thereunder must contemplate the state's due process obligations under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

(*Id*. at p. 644.)  The State filed a memorandum in response, opposing jurisdiction.  (*Id*. at pp. 660-76.)  On March 23, 2022, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (*Id*. at p. 679.)

## D.    Federal Habeas Corpus Petition

Mr. Murphy raises four grounds for relief in his Petition:

**Ground One**: A conviction is not based on sufficient evidence where the complainant and only witness to the alleged misconduct testified that she "really does not know" whether it happened.

**Ground Two**: Applying Ohio's rape shield law to bar testimony that the complainant had previously been abused violates the accused's rights under the Sixth Amendment.

**Ground Three:** Trial counsel's acts and omissions violated petitioner's right to the effective assistance of counsel under the Constitution's Sixth Amendment.

**Ground Four:** The right to due process is violated where the state court holds petitioner responsible for the delay in discovering new evidence of actual innocence, even though the state had withheld that very information.

(ECF Doc. 1 pp. 5, 7-8, 10; ECF Doc. 2, pp. 5-12.)

## III.    Law & Analysis

Respondent argues the Petition should be dismissed or denied because: Grounds One and Three are without merit (ECF Doc. 7, pp. 15-25, 36-47); Mr. Murphy procedurally defaulted his claims in Ground Two, and Ground Two is without merit (*id*. at pp. 25-36); and Ground Four is both non-cognizable and without merit (*id*. at pp. 47-61)  In response, Mr. Murphy argues that: Ground One is meritorious because the evidence supporting his conviction was insufficient when viewed in context (ECF Doc. 10, pp. 6-9); Ground Three is meritorious because trial counsel's

8

acts and omissions violated the right to counsel (*id*. at pp. 9-16); and Ground Four is cognizable and meritorious because Mr. Murphy can show the prosecution hid or withheld exculpatory evidence before and during trial (*id*. at pp. 17-22). Mr. Murphy does not offer argument in opposition to the argument that his claim in Ground Two was procedurally defaulted, nor does he present argument on the merits of Ground Two.[3] The arguments are addressed in turn below.

## A.      Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181, (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] Mr. Murphy claims that he addresses the procedural default of Ground Two in the section of his Traverse addressing ineffective assistance of counsel. (ECF Doc. 10, p. 6, n. 3.) However, in reviewing the entire brief, the undersigned was unable to find a substantive argument that Ground Two is not procedurally defaulted.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**B.    Ground One**

In his first ground for relief, Mr. Murphy argues that federal habeas relief is warranted because his convictions for rape, kidnapping, and disseminating matter harmful to juveniles were not supported by sufficient evidence and the Eighth District Court of Appeals's analysis of his sufficiency claim was unreasonable given the facts.  (ECF Doc. 1, p. 5; ECF Doc. 2, pp. 5-6; ECF Doc. 10, pp. 6-9.)  Respondent argues that the sufficiency claim articulated in Ground One is without merit.  (ECF Doc. 7, pp. 15-25.)

Notably, Mr. Murphy makes no specific arguments that there was insufficient evidence to convict him of kidnapping or disseminating matter harmful to juveniles.  (*See* ECF Doc. 2, pp. 5-6; ECF Doc. 10, pp. 6-9.)  Rather, his arguments focus on physical evidence of rape and the fact that the victim ("M.S.") testified that the whole incident may have been a dream.  However, she also testified that Petitioner showed her obscene images on different days.  (ECF Doc. 7-3, p. 174 (Tr. 397:5-10).)  Thus, while Petitioner's arguments as to the rape conviction may apply with equal force to the kidnapping conviction, they do not necessarily apply to the disseminating conviction.  Considering the lack of argument related to this charge, the undersigned considers any challenge to the conviction for disseminating matter harmful to juveniles waived and focuses the following analysis on the rape and kidnapping convictions.

**1.    Legal Framework for Sufficiency of Evidence Claims**

A "sufficiency of the evidence" claim is cognizable on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970).  In reviewing such a claim, the relevant inquiry is "whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In determining the sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Koneth*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). This "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal citations, quotations, and alterations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies to questions regarding the sufficiency of the evidence. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [and] second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained the two-step deferential analysis as follows:

> First, we must ask whether the evidence itself was sufficient to convict under Jackson. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt.

11

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  Thus, even if this Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

**2.     The Evidence was Sufficient to Support Petitioner's Convictions, and the State Court's Adjudication of the Claim was Not Unreasonable**

Mr. Murphy argues that his convictions are not supported by sufficient evidence because "the complainant in this case testified she was not sure she was raped" and testified on cross-examination that the whole incident "could have been a dream."  (ECF Doc. 2, p. 5; ECF Doc. 10, p. 6.)  He further points out "there was zero physical corroboration of the sexual assault." (ECF Doc. 2, p. 6.)

On direct appeal, the Eighth District Court of Appeals considered similar arguments regarding the sufficiency of the evidence and found them to be without merit, explaining:

> {¶11} Murphy claims that the evidence is insufficient to support the convictions as a matter of law because Doe does not really know whether the incident really occurred and that there is little to no evidence that corroborates Doe's memory. Murphy offers that the conviction is insufficient as a matter of law. We disagree with Murphy's conclusion.
>
> . . .
>
> {¶14} Murphy cites Doe's August 2017 statement to her mother that the incident seemed like a dream broached during cross-examination:
>
>> Counsel: And what made you question whether or not what you thought had occurred? What made you question that?
>>
>> Witness: Because finally like my heart and my instincts were telling me like it didn't happen. And then like my head was telling me it did happen.
>>
>> Counsel: Did you say something about a dream?

12

Witness: Yeah. Like it could have been a dream. Because like if I — like — well, this happened a couple years ago when my mom and my dad were together. Like they would like say that we went to — like we would go to boot camp, but we really didn't. Then I like had a like dream and then I found out like a couple months later once I told my mom I thought it happened, and she finally told me that it didn't happen.

Counsel: Is that something that's happened to you on more than one occasion? Has that happened with other things?

Witness: It was just that thing.

Counsel: Sometimes you have a dream or sometimes you think something happened and it really didn't?

Witness: Yes.

Counsel: What do you think with respect to what you said your stepdad did to you? What do you think, did happen or did it not happen?

Witness: Um, I really don't know.

Counsel: Okay. And you went to the doctor's, right?

Witness: Yes.

Counsel: And did they tell you that were okay?

Witness: Yes.

Counsel: Do you miss your stepdad?

Witness: Um, yeah.

Counsel: Has anybody made you say what you just told me?

Witness: No.

(Tr. 417-419.)

{¶15} During redirect examination, Doe recounted a situation that occurred when she was much younger where she thought that she recalled going to boot camp with her biological parents but she later learned that it did not happen. Doe said the situation was "I like had a like dream." (Tr. 418.)

13

State: Is that something that's happened to you on more than one occasion? Has that happened with other things?

Witness: It was just that thing.

(Tr. 418.)

{¶16} Doe then explained:

State: You said your heart told you that it didn't happen but your mind told you it did?

Witness: Yes.

State: Is it hard for you to accept that all those things happened?

Witness: Um, kind of?

State: Are they bad memories?

Counsel: Objection, Your Honor.

Court: Overruled.

State: Did you understand the question?

Witness: No.

State: Stuff you — when you described his private in your front private, is that one of your happy memories or bad memories?

Witness: Like a bad memory.

State: What about when his private is going into your back private and his hands are pulling apart your butt cheeks? Is that a good memory or a bad memory?

Witness: A bad memory.

* * *

State: When you said his tongue was on your vagina — on your private part, is that a good memory or a bad memory?

Witness: A bad memory.

State: When you said that white stuff came out of his private and it was on your face and partly in your mouth, is that a good memory or a bad memory?

14

Witness: A bad memory.

State: And when you had to look at the images on his phone where you saw grown-up people doing the stuff you described, was that a good memory or a bad memory?

Counsel: Objection, Your Honor.

Court: Overruled.

Witness: A bad memory.

(Tr. 419-421.)

{¶17} The defense questioned Doe about her out-of-court statement to her mother. . . .

{¶18} Doe testified that in October 2016, her mother was not at home when Murphy told Doe to enter the bedroom. Doe's siblings were in the other room.[] Murphy closed and locked the door, removed Doe's clothing and then removed his own. Doe next stated that Murphy's "front area" "private part" that is used to "pee" "went into" "her front area" that is "used to pee." (Tr. 393-394.) Next, Murphy's "private part" went into "my back private part" and Doe could feel Murphy's hands on her "butt cheeks" "spreading them apart." (Tr. 394.) Doe stated that she was standing during the first two acts but that she was laying on the bed when Murphy began "licking my front part." (Tr. 395.)

{¶19} Doe testified that "white stuff * * * was like all over my face and kind of in my mouth a little" that came from Murphy's "private part." (Tr. 405.) Murphy "wiped it off" with a wipe. (Tr. 405.) Doe also testified that, in October 2016 and "on different days," Murphy showed pornographic videos to Doe while in the bedroom. The videos were viewed on Murphy's cell phone and showed nude men and women "being on each other" and "licking each other and kissing each other and stuff." (Tr. 397-398.)

{¶20} Doe also testified that she did not tell the social workers or anyone else that the events were like a dream. Doe's statements to Portage County Social Worker Alexandra Toth ("Toth"), Cleveland sex crimes unit Detective Cynthia Adkins ("Det. Adkins") and Dr. Phil McPherson ("Dr. McPherson") of Akron Children's Hospital were consistent with Doe's testimony.

{¶21} A week after Doe revealed the incident to her father's girlfriend and paternal grandmother, Doe was interviewed by social worker Toth with Portage County Children's Services. Toth testified that Doe told Toth that Murphy "touched her privates" and showed "her [adult] videos on his phone" depicting "naked * * * girls

licking girls' privates and girls sucking boy's privates." (Tr. 260.) Doe also told Toth about the cunnilingus, anal and vaginal penetration, and that Murphy wiped off the "white stuff" off of her face that was emitted by Murphy's "private." (Tr. 262.)

{¶22} Toth and a detective went to Doe's house and informed Doe's mother of the allegations. The mother and Murphy were instructed that he could not reside in the home during the investigation. The social services agency subsequently discovered that the mother allowed Murphy to return to the home without agency or police permission.

{¶23} Toth took Doe to Akron Children's Hospital where she was examined by Dr. McPherson who was specially trained in child sexual abuse cases. The examination took place in April 2017, approximately sixth months after the incident. No genital abnormalities were found. Dr. McPherson opined that "[i]n my years of doing this as well as in the medical literature, and it sounds surprising, but in most cases of child sexual abuse, physical exam findings of the genital area and the anal area are normal." (Tr. 318.) Toth observed the interview through a one-way mirror and testified that Doe's statement to Dr. McPherson was consistent, though more detailed, than her interview with Toth.

{¶24} Dr. McPherson also said that it is common for "children who have experienced sexual abuse" to report "sensory-motor details, contextual details." (Tr. 311.)

> So, for example, in sensory-motor details, if a child is stating that, well, for example, he took off my clothes, he laid me down on the bed and he put his mouth or his tongue on my private part, those are sensory-motor details that a child who hasn't experienced child sexual abuse, especially the younger ones, may not be able to describe in the manner that they did.

> If a child says that white stuff or milk or something came out of the person's penis and landed on them, again, that's a detail that typically children will not be able to communicate unless it's happened to them. Many times children have been exposed to pornographic images. If they provide details about those pornographic images, who was there, what kind of device was used, *et cetera*, those are details that a child typically cannot make up. And so these contextual sensory-motor details are just as important for us as the type of contact abuse that the child experienced.

(Tr. 311-312.)

{¶25} A victim's testimony alone is sufficient to support a conviction for sexual conduct. *State v. Bacho*, 8th Dist. Cuyahoga No. 93828, 2010-Ohio-4885. *See also State v. Timmons*, 10th Dist. Franklin Nos. 13AP-1038 and Franklin Nos. 13AP-1039, 2014-Ohio-3520, ¶ 23, citing *State v. Henderson*, 10th Dist. Franklin No.

16

10AP-1029, 2011-Ohio-4761, ¶ 17. Further, to Dr. McPherson's observation regarding the lack of genital abnormalities, "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse" for purposes of rape. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 23, citing R.C. 2907.01(A). Also, "'a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury.'" *State v. Parks*, 8th Dist. Cuyahoga No. 106977, 2019-Ohio-867, ¶ 11, quoting *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46.

{¶26} Doe testified that Murphy closed and locked the bedroom door, removed her clothing and proceeded to engage in the sexual activity. Kidnapping under R.C. 2905.01(A)(4) "requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 196; *State v. Dove*, 8th Dist. Cuyahoga No. 101809, 2015-Ohio-2761, ¶ 37. "[T]he kidnapping statute punishes certain removal or restraint done with a certain purpose." *State v. Cope*, 12th Dist. Butler No. CA2009-11-285, 2010-Ohio-6430, ¶ 68. R.C. 2941.147, the sexual motivation specification statute, requires that the state show that the underlying offense was committed with "a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J). *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 43.

{¶27} As to the length and manner of the restraint for a kidnapping conviction, this court has held:

> Ohio law is clear that "[a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he is.'" *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021, citing *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, [2000 WL 1639621], 2000 Ohio App. LEXIS 5057 (Nov. 2, 2000).

*State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 24.

{¶28} A minor may be restrained where there is "'evidence of subtle and/or psychological force'" by an individual "'who is an authority figure'" "'even in the absence of any express threat of harm of significant physical restraint.'" *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, ¶ 30, quoting *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 12 (involving a 13-year-old), and *State v. Szorady*, 8th Dist. Cuyahoga No. 95045, 2011-Ohio-1800, ¶ 34 (also involving 13-year-old victims). *See also State v. Garner*, 8th Dist. Cuyahoga No. 89840, 2008-Ohio-1949, ¶ 18, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988) ("'in cases involving the 'filial obligation of obedience to a parent,' a lesser showing of force may be sufficient.'")

. . .

{¶33} Viewed in a light most favorable to the prosecution, we find that the evidence was sufficient to support the convictions in this case as a matter of law. The first assigned error lacks merit.

(ECF Doc. 7-1, pp. 130-40 (alterations and emphases in original) (footnotes omitted).)

In assessing Mr. Murphy's sufficiency of the evidence claim, this Court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205. But at its core, that is precisely what Mr. Murphy's argument about M.S.'s testimony asks this Court to do: decide that what M.S. said on cross-examination carries more weight than what she said on direct. *See, e.g., Matthews*, 319 F.3d at 788 ("An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.")

As explained by the court of appeals, M.S. testified in detail on direct about being locked in her parents' bedroom and sexually assaulted. (ECF Doc. 7-1, pp. 134-39; *see* ECF Doc. 7-3, pp. 168-75 (Tr. 391:10-398:23), 181-82 (Tr. 404:23-405:23), 200-01 (Tr. 423:21-424:19).) Additionally, a social worker testified that M.S. gave a consistent account to her family, to the social worker, and to a second social worker. (ECF Doc. 7-1, pp. 135-36; *see* ECF Doc 7-3, pp. 50 (Tr. 273:20-25), 77 (Tr. 300:2-17).)

Thus, while M.S. testified on cross-examination that she was not sure the rape and kidnapping happened and that it may have been a dream (ECF Doc. 7-3, pp. 194-95 (Tr. 417:23-418:24)), the jury heard this testimony, M.S.'s earlier testimony explicitly detailing being locked in a bedroom and raped multiple ways, and testimony that she gave a consistent account to the social worker and others. It was the jury's provenance, not that of this Court, to resolve these

18

conflicts in M.S.'s testimony and weigh the evidence. *Jackson*, 443 U.S. at 319. *See Matthews*, 319 F.3d at 788 (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)).

Petitioner would have the Court find that the no rational trier of fact could have resolved the conflicts in M.S.'s testimony as the jury did here because this was an isolated incident with no witnesses (ECF Doc. 10, pp. 7-8), and there was "zero physical corroboration of sexual assault" (ECF Doc. 2, p. 6). However, once again, Petitioner is asking this Court to weigh the evidence and substitute its judgment for that of the fact-finder—something it is not permitted to do. *See Brown*, 567 F.3d at 205; *Matthews,* 319 F.3d at 788.

Moreover, Petitioner's arguments that the jury's verdict was not rational are not persuasive. First, as the court of appeals recognized, the fact that the doctor found no "vaginal abnormalities" or other physical evidence of rape upon examining M.S. is far from dispositive, as under Ohio law, "'penetration, however slight, is sufficient to complete vaginal or anal intercourse' for the purposes of rape." (ECF Doc. 7-1, p. 136 (quoting *State v. Brown*, 2013-Ohio-3134, ¶ 23, 2013 WL 3808558, at *4 (Ohio Ct. App. July 18, 2013) (citing O.R.C. § 2907.01(A))).) Moreover, the doctor who examined M.S. in April 2017 testified that normal physical exams of the genital and anal areas are very common in child sexual assault cases, and this was particularly true where, as here, months passed between the incident and the examination. (ECF Doc. 7-3, pp. 95-99 (Tr. 318:12-322:17).)

Secondly, while Petitioner is correct that no eyewitnesses corroborated M.S.'s testimony describing the kidnapping and assault, the Sixth Circuit "has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker*, 541 F.3d at 658 (citing *United States v. Terry,* 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")). Thus,

even without the doctor's and social worker's testimony, if the jury found M.S. credible in what she testified Petitioner did to her, that testimony was sufficient to sustain a conviction for rape and kidnapping.  As noted above, this credibility determination was for the trier of fact to make, and their decision is owed deference.  *Davis*, 658 F.3d at 531 (quoting *Tucker*, 541 F.3d at 656).

Considering the foregoing, the undersigned finds that "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of [Petitioner's rape and kidnapping convictions] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This Court may end its inquiry here.  *See Stewart*, 595 F.3d at 653 (explaining that "[t]he inquiry ends if the [court] determines that there was sufficient evidence to convict [the petitioner]").

Even if this Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White*, 602 F.3d at 710.  Under the second layer of deference applied to federal habeas review of sufficiency claims under AEDPA, the question becomes "whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [Mr. Murphy] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Brown*, 567 F.3d at 205 (emphasis in original).  While Mr. Murphy contends that the evidence was not sufficient to convict him, he does not directly argue that the determination of the state court of appeals was unreasonable except to conclude that it must have been unreasonable because "on this evidence, a rational trier of fact could not find Murphy guilty beyond a reasonable doubt."  (ECF Doc. 10, p. 9.)  This argument ignores AEDPA deference.

The undersigned's review of the state court adjudication of Mr. Murphy's sufficiency of the evidence claim does not reveal that it "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103).

For the reasons set forth above, applying the doubly deferential standard for sufficiency of the evidence claims, the undersigned finds no merit to the claim in Ground One.  When the evidence is viewed in the light most favorable to the State, it does not reflect that "no rational trier of fact could have agreed with the jury" that Mr. Murphy was guilty of rape and kidnapping. *Coleman*, 566 U.S. at 651.  Further, the undersigned concludes that this Court should defer to the state court of appeals's sufficiency finding because it was not unreasonable.  *Brown*, 567 F.3d at 205.  Accordingly, the undersigned recommends that Ground One of the Petition be **DENIED**.

## C.    Ground Two

In Ground Two, Mr. Murphy argues that his constitutional rights to present a complete defense, cross-examine a witness, and have a fair trial were denied when the trial court did not allow him to cross-examine the state's medical expert regarding the victim's past sexual abuse. (ECF Doc. 1, p. 7; ECF Doc. 2, pp. 6-8; *see* ECF Doc. 7-3, pp. 106-07 (Tr. 329:16-330:4).). Specifically, he argues that "as applied in petitioner's trial, Ohio's rape shield law improperly impinged his right to present important relevant evidence to this jury."  (ECF Doc. 2, p. 7.)

Respondent argues that the claim in Ground Two is procedurally defaulted because the state appeals court applied and enforced two state procedural bars in rejecting it: first, when it found Mr. Murphy forfeited the claim for anything other than plain error review because trial counsel did not object to exclusion of the prior sexual abuse evidence at trial; and second, when it found Mr. Murphy had waived any challenge to exclusion of that evidence by failing to request

a hearing on its admissibility before trial per the exceptions to Ohio's rape shield law.  (ECF Doc. 7, pp. 26-27.)  In response, Mr. Murphy claims to have incorporated an argument to excuse the procedural default into his ineffective assistance of counsel claim.  (ECF Doc. 10, p. 6, n. 3.)  The undersigned found no such argument upon review of the Traverse.

For the reasons set forth below, the undersigned agrees with Respondent that Ground Two was procedurally defaulted and that Petitioner has not demonstrated cause, prejudice, or a fundamental miscarriage of justice to overcome that default.  Therefore, the Court need not address the merits of the claims in Ground Two.

### 1.  Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. §§ 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair

presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default applies rather than exhaustion.  *See id*.

Procedural default may occur in two ways.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: 1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; 2) whether the state court enforced the procedural rule; 3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and 4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule,

the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E.2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See id.* (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: 1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or 2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### 2. Ground Two Was Procedurally Defaulted

As noted above, Mr. Murphy claims that the trial court's application of Ohio's rape shield law to exclude evidence of M.S.'s prior sexual abuse violated his constitutional rights to present

a complete defense, cross-examine a witness, and have a fair trial. (ECF Doc. 1, p. 7; ECF Doc. 2, pp. 6-8.) Respondent argues that the Petition should be dismissed because the claims in Ground Two were procedurally defaulted. (ECF Doc. 7, pp. 25-28.) Mr. Murphy does not address the argument that he procedurally defaulted Ground Two (*see* ECF Doc. 10), despite suggesting briefly that ineffective assistance of counsel caused any default (*id*. at p. 6, n. 3).

On direct appeal, Mr. Murphy challenged the trial court's decision to preclude him from cross-examining the State's medical expert about prior sexual abuse of M.S. (ECF Doc. 7-1, pp. 107-08.) The Eighth District Court of Appeals addressed his challenge, first finding that only plain error review was appropriate, as "[a] defense objection on this issue was not stated for the record during trial." (ECF Doc. 7-1, p. 160.) The court went on to discuss Ohio's rape shield law and relevant exceptions (*id*. at pp. 160-63), concluding that Mr. Murphy "waived his right to challenge the trial court's decision" because in order to present evidence of a victim's prior sexual activity, including sexual abuse, Mr. Murphy was required to request a hearing on the admissibility of such evidence prior to trial (*id*. at p. 163).

A petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. To assess procedural default based on this standard, courts in the Sixth Circuit apply the four-prong *Maupin* analysis. *See id.* at 807 (citing *Maupin*, 785 F.2d at 138).

Under the first prong of the *Maupin* analysis, this Court must determine whether Mr. Murphy failed to comply with a state procedural rule. *See* 785 F.2d at 138. The first prong is met here because, as the state court of appeals found, and Mr. Murphy does not dispute, Mr. Murphy waived any objection to exclusion of prior sexual abuse evidence by: 1) failing to raise

25

that specific objection at trial and 2) failing to avail himself of the statutory process for admitting prior sexual abuse evidence in rape trials.  (ECF Doc. 7-1, pp. 160-63.)

"The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review."  *State v. Murphy,* 91 Ohio St. 3d 516, 532 (2001).  Thus, "[e]rror that is not specifically objected to at trial is waived."  *State v. Brown*, 38 Ohio St. 3d 305, 312 (1988); *see Condon v. Wolfe,* 310 F. App'x 807, 813 (6th Cir. 2009) (same) (quoting *Brown*, 38 Ohio St. 3d 305); *Nicholson v. Gray*, No. 5:18 CV 379, 2019 WL 6498905, at *8 (N.D. Ohio Sept. 17, 2019) ("Under Ohio's contemporaneous objection rule, any error not objected to at trial is waived absent plain error."), *report and recommendation adopted,* 2019 WL 6493920 (N.D. Ohio Dec. 3, 2019).

Additionally, Ohio's rape shield law excludes evidence of a victim's prior sexual activity, including sexual abuse, except in specific circumstances and for specific purposes.  *See* O.R.C. § 2907.02(D); *State v. Young*, 2009-Ohio-5354, ¶ 23, 2009 WL 3216611, at *3 (Ohio Ct. App. Oct. 8, 2009) (quoting *State v. Brisco*, 2000 WL 1222006, at *4 (Ohio Ct. App. Aug. 24, 2000) (citing *State v. Gardner,* 59 Ohio St.2d 14, 16-17 (Ohio 1979)) and citing *State v. N.D.C.,* 2007-Ohio-5088, 2007 WL 2800327 (Ohio Ct. App. Sept. 27, 2007)).  Relevant here, Ohio courts have found that "evidence of prior sexual abuse to a victim, who is a child of tender years, may be admissible for the defense to show the source for the child's sexual knowledge."  *In re M.C.*, 2013-Ohio-2109, ¶ 61, 2013 WL 2295982, at *12 (Ohio Ct. App. May 23, 2013) (internal quotations marks and citations omitted); *see also In re Michael*, 119 Ohio App.3d 112, 120-21 (Ohio Ct. App. 1997); *N.D.C.*, 2007 WL 2800327, at *6-7.

In order to admit evidence of a victim's prior sexual activity or abuse, a defendant must follow certain procedures:

> Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court <u>shall</u> resolve the admissibility of the proposed evidence in a hearing in chambers, which <u>shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial</u>.

O.R.C. § 2907.02(E) (emphasis added).  Ohio courts have held that a trial court is not required to hold such a hearing sua sponte; rather it is the responsibility of the party seeking to submit evidence of prior sexual activity to request a hearing and failure to do so may result in waiver of the right to present such evidence.  *See, e.g., Young*, 2009 WL 3216611, at *4-5 (citing *State v. Evans,* 2005-Ohio-3847, ¶74, 2005 WL 1792351, at *10 (Ohio Ct. App. July 28, 2005) (citing *State v. Acre*, 6 Ohio St. 3d 140, 144 (Ohio 1983))); *State v. Wolff*, 2009-Ohio-2897, ¶ 103, 2009 WL 1710736, at *18 (Ohio Ct. App. June 9, 2009).

Mr. Murphy does not deny that his trial counsel failed both to comply with the contemporaneous objection rule and to request a hearing on the prior sexual abuse evidence prior to trial; he only argues that the trial court's failure to allow him to ask questions about prior sexual abuse of M.S. denied him his constitutional rights.  (ECF Doc. 2.)  The undersigned therefore finds Mr. Murphy failed to comply with not one, but two state procedural rules.

Under the second prong of the *Maupin* analysis, the Court must determine whether the state enforced its procedural rule.  *See* 785 F.2d at 138.  Here, the state court enforced Ohio's contemporaneous objection rule when it found that Mr. Murphy was entitled only to plain error review due his counsel's failure to object to exclusion of the prior sexual abuse evidence at trial.  (ECF Doc. 7-1, p. 160.)  The court went on to discuss the law governing the admission of prior sexual acts evidence in a rape trial and did not reach the question of whether exclusion of such evidence here changed the outcome of the trial under plain error review, finding instead that Mr.

Murphy waived his right to challenge the exclusion of the evidence because he did not request a hearing to determine the admissibility of the evidence prior to trial. (*Id.* at pp. 160-63.)

Since the state court of appeals reviewed the claim underlying Ground Two only for plain error under Ohio's contemporaneous objection rule and ultimately declined to apply even that deferential standard because Mr. Murphy waived his right to raise the claim under a different procedural rule, the undersigned finds the second *Maupin* prong is met.

Under the third prong of the *Maupin* analysis, this Court must determine whether the procedural rule establishes an adequate and independent state law ground under which the claim may be procedurally defaulted. *See* 785 F.2d at 138. This inquiry requires a determination that the procedural rule is "independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Id*. at 316 (quoting *Beard v. Kindler,* 558 U.S. 53, 60-61 (2009)).

The Sixth Circuit has held that Ohio's contemporaneous objection rule is an adequate and independent state ground for precluding federal habeas review. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("We have held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.") (citations omitted); *see also Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) (citing *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000)).

The law is less settled regarding whether O.R.C. § 2907.02(E)'s hearing requirement is an adequate and independent state law ground under which a habeas claim may be procedurally defaulted. However, at least one other court in this circuit has found it to be so, reasoning:

28

> [T]he procedural grounds at issue satisfy the third element of *Maupin* . . . . The state appellate court did not consider the merits of Petitioner's underlying claim in determining whether to apply . . . the hearing requirement of Ohio Rev. Code 2907.02(E). Further, Ohio courts regularly apply [the hearing requirement of O.R.C. § 2907.02(E)] to preclude review of a defendant's claim that he was deprived of the opportunity to question a witness regarding . . . her past sexual activities. *See, e.g., State v. Acre, 451 N.E.2d 802, 805, 6 Ohio St.3d 140, 144 (Ohio 1983)* (holding that defendant who fails to request a hearing under Ohio Rev. Code 2907.02(E) waives his right to such a hearing); *State v. Netherland, 724 N.E.2d 1182, 132 Ohio App.3d 252 (Ohio App.Ct.1999)* (same)[. . .]). Accordingly, . . . the hearing requirement of Ohio Rev. Code 2907.02(E) . . . constitute[s] [an] independent and adequate state procedural ground[] for declining to review the merits of these claims.

*Wolff v. Tibbles*, No. 4:11 CV 454, 2014 WL 2694227, at *12 (N.D. Ohio June 13, 2014).

The undersigned finds this reasoning persuasive.  The hearing requirement of O.R.C. § 2907.02(E) is "independent of the federal question" at issue here.  And as the *Wolff* court found, Ohio courts apply the hearing requirement "to preclude review of a defendant's claim that he was deprived of the opportunity to question a witness regarding . . . her past sexual activities" or past sexual abuse.  *Id.; see Young*, 2009 WL 3216611, at *4-5 (declining to address the merits of defendant's argument that the trial court erred in how it decided the admissibility of the victim's prior sexual activity where he knew of the evidence at trial and failed to comply with § 2907.02(E)); *Wolff*, 2009 WL 1710736, at *18 (finding issue of whether defendant should have been permitted to submit evidence of prior sexual abuse waived where the defendant knew of the evidence at the time of trial and did not request a pre-trial hearing under O.R.C. § 2907.02(E)); *State v. Hruby*, 2005-Ohio-3863, ¶ 12, 2005 WL 1793772, at *2 (Ohio Ct. App. July 29, 2005) ("In the present case, appellant failed to make a timely request for an admissibility hearing and thereby waived that statutory right.") (internal citations omitted).

As the hearing requirement of O.R.C. § 2907.02(E) is independent of the federal question presented in Ground Two and is a "firmly established and regularly followed" procedural rule,

the undersigned finds that it constitutes an adequate and independent state procedural ground that bars federal habeas review absent a showing of cause and prejudice.  *Walker*, 562 U.S. at 315-16.  Thus, the third prong of the *Maupin* analysis has also been met, and Ground Two was procedurally defaulted unless Petitioner can show cause and prejudice to excuse the default.

Mr. Murphy does not present argument regarding the application of the first three *Maupin* prongs, and only briefly alludes to ineffective assistance of counsel as potential cause to excuse his procedural default of Ground Two.  (ECF Doc. 10.)  Specifically, he states in passing that the question of the procedural default of Ground Two is "incorporated in [his] ineffective assistance of counsel claim."  (ECF Doc. 10, p. 6, n.3.)  However, in reviewing Petitioner's arguments on his ineffective assistance of counsel claim (Ground Three), the undersigned found no substantive argument that trial counsel was ineffective for not objecting to the exclusion of prior sexual abuse evidence or for not requesting a hearing to determine the admissibility of such evidence.  (*Id*. at pp. 9-16; *see also* ECF Doc. 1, p. 7; ECF Doc. 2, pp. 8-9.)  Accordingly, the undersigned finds that to the extent Petitioner asserts that ineffective assistance of trial counsel led to the procedural default of Ground Two, he has failed to adequately support his argument.

Mr. Murphy also does not argue that a failure to consider the claims in Ground Two will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).  For an actual innocence claim to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  He must further "show that it is more likely than not that no reasonable juror would have

30

convicted him in the light of the new evidence." *Id.* at 327.  This standard is intended to permit

petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest

injustice." *Id.* (internal quotations omitted).  Importantly, "'actual innocence' means factual

innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Therefore, "[w]hen conducting an actual innocence analysis, courts must look at all evidence,

'old and new' without regard to its admissibility" to determine whether "no reasonable juror

would find [the petitioner] guilty." *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024), cert.

denied sub nom. *Hubbard v. Tanner*, 145 S. Ct. 1201 (2025) (alteration in original) (quoting

*House v. Bell*, 547 U.S. 518, 538 (2006)).

Here, Petitioner does not argue that the procedural default of Ground Two should be

excused based on his actual innocence (*see* ECF Docs. 2, 10), but he does reference post-trial

testimony from M.S.—specifically, statements that she told the prosecutor before trial about

doubts that Mr. Murphy raped her, but that the prosecutor told her she was wrong and needed to

testify that she had been raped—in support of his claims in Ground Four of the Petition.  (ECF

Doc. 2, pp. 10-12; ECF Doc. 10, pp. 18-21.)  In that context, Petitioner argues that the prosecutor

improperly failed to disclose pre-trial communications between M.S. and the prosecutor before

the trial, and then compounded the impropriety by putting M.S. on the witness stand to offer

testimony the prosecutor "knew M.S. believed to be untrue."  (ECF Doc. 10, pp. 18-19.)

To the extent that these arguments could also support a request to excuse Mr. Murphy's

procedural default of Ground Two, Respondent argues that Mr. Murphy has failed to show actual

innocence because "[h]e has not presented this court with any new, credible evidence

demonstrating his innocence nor has he shown that in light of new evidence, 'it is more likely

than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'"

(ECF Doc. 7, p. 28 (quoting *Schlup*, 513 U.S. at 327-28).)  As to the post-trial statements from M.S. in particular, Respondent argues that the testimony is "nothing new" because M.S. "testified at trial that she was uncertain whether the allegations of rape were true because 'like it could have been a dream,' and testified regarding false-memory events, including the 'boot camp story.'"  (*Id.* (quoting ECF Doc. 7-1, p. 634, ¶ 28).)

The testimony referenced by Mr. Murphy comes from an interview of M.S. that was recorded by Mr. Murphy's attorneys in 2020, which was provided to the state court of appeals in support of Mr. Murphy's motion for leave to file a motion for a new trial in 2021.  (ECF Doc. 7-1, pp. 349-99.)  In that interview, M.S. made the following statements, in pertinent part:

- M.S. met with the prosecutor a couple of times before trial (*id.* at p. 367);

- M.S. once practiced answering questions from the prosecutor in the courtroom, where the prosecutor asked questions and M.S. answered them (*id.* at pp. 368-69);

- M.S. once had a false memory about going to boot camp (*id.* at pp. 369-71);

- M.S. told the prosecutor about that false memory two days before the trial, and the prosecutor said she "was lying about it because some people do that a lot" (*id.* at p. 371);

- M.S. told the prosecutor: "what I said might not be true," that "somebody might have just got it stuck in my head or something," "[a]nd I just started making memories of it," but the prosecutor "didn't believe me because she said she got a lot of cases that they act like they were lying or don't remember" (*id.* at 372);

- M.S. did not talk to Mr. Murphy's attorney until she was on the stand at trial, and did not tell Mr. Murphy's attorney "the story about boot camp" until trial (*id.* at p. 375);

- M.S. no longer believed her own allegations against Mr. Murphy were true because she "had a lot of false memories when [she] was little" and did not "remember any details that [she] had said when [she] was younger" and she knew people who were raped and "they still remembered this stuff till this day and I don't" (*id.* at p. 376);

- M.S. told the prosecutor "about the boot camp thing" and that she "had, like, forgot the details," and the prosecutor "went over them again and said, like 'this is what you need to say at trial'" (*id.* at p. 387);

- When asked if she told the prosecutor that her "memory about what happened with [Mr. Murphy] wasn't true," M.S. answered: "Yeah, and she said she didn't believe me.  And I told her, like, I forgot the details what I said and then that's when she started going over what I had told her and what I needed to say there." (*id.*);

- When asked again if she told the prosecutor "that it wasn't true about [Mr. Murphy]," M.S. again answered "[y]eah" and said the prosecutor read back the things M.S. had previously said and told M.S. "This is what you have to say at trial." (*id.* at p. 388);

- When asked if she told the prosecutor before trial that she "didn't believe what [she] [was] saying was true," M.S. answered: "Yes. That's when she had told me that I was lying." (*id.* at 395).

After considering this testimony, the state court of appeals found Mr. Murphy had failed to show that he was unavoidably prevented from discovering the alleged pretrial conversations between M.S. and the prosecutor before the deadline to file a motion for a new trial, noting that M.S. had testified at trial that she was uncertain about her allegations, putting Mr. Murphy "on notice that the victim's allegations may have been based on a faulty recollection," and also highlighting the failure of Mr. Murphy's trial counsel to interview M.S. before the trial, explaining that "[c]laims that evidence was undiscoverable simply because the defense did not take the necessary steps earlier to obtain the evidence do not satisfy the requisite standard." (*Id.* at pp. 634-35, ¶¶ 28-29.)

To excuse Mr. Murphy's procedural default based on actual innocence, this Court would first have to find that the 2020 transcript contained "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324.  As Respondent has argued, it is clear that much of the post-trial testimony highlighted by Petitioner is not "new" and was presented at trial.  For example, M.S. testified at trial that she thought the incident may have been a dream (ECF Doc. 7-3, p. 195 (Tr. 418:4-5)), that she had a history of false memories (*id*. (Tr. 418:6-17)), and that she "did not really know" whether the incident happened (*id*. (Tr. 418:22-24)).  M.S. also testified at trial about her complaint that the prosecutor, when she met with M.S. prior to trial, "was telling [M.S.] about the details of what [M.S.] [was] saying happened." (*Id.* at p. 194 (Tr.

417:6-11).)  As discussed in greater detail in Section III.B.2., *supra*, the jury considered this testimony along with the other evidence and still chose to convict.

Further, to the extent that any testimony in the post-trial transcript might be considered "new" evidence—like statements that M.S. told the prosecutor her prior testimony wasn't true, but the prosecutor still read M.S. her prior testimony and said "[t]his is what you have to say at trial"—the testimony may not be sufficiently "reliable" under the standard.  First, while M.S. independently reported that she told the prosecutor she did not remember the details of her earlier allegations, her only testimony indicating that she affirmatively told the prosecutor her prior statements were not "true" was limited to answers of "yeah" or "yes" to questions posed by Mr. Murphy's attorneys.  (*See* ECF Doc. 7-1, pp. 367-95.)  Further, as the Sixth Circuit has noted, "[a] vacillating witness who changes [her] story multiple times is often presumed to be unreliable."  *Hubbard*, 98 F.4th at 749 (citing *Davis v. Bradshaw*, 900 F.3d 315, 330 (6th Cir. 2018)).  Not only did M.S. make contradictory statements regarding her initial allegations against Mr. Murphy, including trial testimony that she "really didn't know" if the rape actually occurred, but she was cross examined extensively at trial regarding those contradictory statements.

Ultimately, even if the relevant testimony was considered "new reliable evidence," Mr. Murphy has failed to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" contained in the 2020 transcript.  *Schlup*, 513 U.S. at 324.  At best, the new testimony creates a question as to the credibility of M.S.'s trial testimony, a question that was already vetted extensively through cross examination at trial. That is not adequate to support a finding of actual innocence.  Accordingly, the undersigned finds that Mr. Murphy has not demonstrated a fundamental miscarriage of justice would occur if

the claims underlying Ground Two were not considered—in other words, that he is actually innocent. *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).

For the reasons set forth above, the undersigned concludes that Ground Two was procedurally defaulted, and that Mr. Murphy has not met his burden to show cause and prejudice or a fundamental miscarriage of justice to excuse the default. Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two with prejudice based on procedural default.

**D.     Ground Three**

Mr. Murphy argues in Ground Three that federal habeas relief is warranted because his trial counsel was ineffective due to their failure to: (1) object to the examining doctor's testimony that M.S. was sexually abused; (2) object to the admission of adult pornography accessed from Petitioner's phone months after the alleged incident; (3) object to the admission of evidence that Petitioner was willing to take a polygraph test and of content from his phone researching polygraphs; and (4) request redaction of certain statements from a police interrogation video. (ECF Doc. 1 p. 8; EFC Doc. 2, pp. 8-9.) Mr. Murphy presented these claims to the state courts on direct appeal, preserving them for federal habeas review. (ECF Doc. 7-1, pp. 74-80, 182-83.) Respondent argues that Ground Three is without merit. (ECF Doc. 7, pp. 36-47.) Mr. Murphy replies with more detailed arguments relating to each alleged instance of ineffective assistance of counsel. (ECF Doc. 10, pp. 9-16). For the following reasons, the undersigned finds that Mr. Murphy's ineffective assistance of counsel claims are without merit.

**1.     Legal Framework for Ineffective Assistance of Counsel Claims**

In *Strickland v. Washington*, the Supreme Court set forth two requirements to establish that an attorney was constitutionally ineffective. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, a petitioner must demonstrate "that counsel's performance was deficient," which

"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In such cases, the petitioner must show that the representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* 689. Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To meet this requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome."

Where a state court of appeals has reached the merits of the ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . .

36

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). <u>When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.</u>

*Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105) (emphasis added)).

Where a state court has not assessed an ineffective assistance of counsel claim on the merits, AEDPA deference does not apply, and the claim is considered *de novo*. *McAdoo v. Elo,* 365 F.3d 487, 498 (6th Cir. 2004). This is because by its language, 28 U.S.C. § 2254(d) is applicable only to habeas claims that were adjudicated "on the merits" in the state court. The Supreme Court clarified the meaning of "on the merits" in *Harrington*. 562 U.S. at 98-100; *see Stermer v. Warren*, 959 F.3d 704, 722 (6th Cir. 2020). The court explained: "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Under this standard, "unless there is a good reason for a federal court to think a state court's decision was *not* on the merits, the federal court must assume it *was* on the merits and apply § 2254(d)." *Stermer*, 959 F.3d at 722 (emphasis in original). The presumption that a state court decision was adjudicated on the merits can only be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* (citing *Harrington*, 562 U.S. at 99-100).

As noted above, Mr. Murphy alleges in part that trial counsel was ineffective for: (1) failing to object to the examining doctor's testimony that M.S. was sexually abused; (2) failing to object to the admission of adult pornography accessed from Petitioner's phone months after the alleged incident; (3) failing to object to evidence of Petitioner's stated willingness to take a polygraph test and of content from his phone researching polygraphs; and (4) failing to request

37

redaction of certain statements from a police interrogation video.  (ECF Doc. 1 p. 8; EFC Doc. 2, pp. 8-9; ECF Doc. 10, pp. 9-14.)  The state court appeals addressed the first three allegations together, as they related back to independent claims of trial error made on direct appeal.  (ECF Doc. 7-1, pp. 156-60; *see id*. at pp. 58-60, 67-74 (arguing that the trial court erred in admitting the doctor's testimony, the pornography evidence, and the polygraph evidence).)  The undersigned will follow the approach of the state court of appeals and address the first three allegations of ineffective assistance of counsel together before turning to the fourth, which the state court addressed separately.

### 2. Arguments that Trial Counsel Was Ineffective for Failing to Object to the Admission of Specific Evidence Are Without Merit

In rejecting Petitioner's arguments that his counsel was ineffective for failing to object to the trial court's admission of the doctor's testimony, the pornography evidence, and the polygraph evidence, the Eighth District Court of Appeals relied upon its earlier findings that admission of that evidence was not error in the first place, explaining:

{¶82} Murphy states that counsel was ineffective for failing to object to evidence referenced in Murphy's assignments of error: <u>(1) Dr. McPherson's expert diagnosis that Doe was a victim of sexual abuse; (2) admission of the cell phone evidence of pornographic access; (3) the polygraph references and related cell phone search;</u> (4) improper impeachment of Murphy's videotape statement; (5) admission of the unredacted video interrogation; and (6) a host of other statements by Det. Adkins's testimony.

{¶83} Murphy claims that the cumulative effect of counsel's error deprived him of a fair trial.

The Ohio Supreme Court has recognized the doctrine of cumulative error. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *Id.* at 196-197, 509 N.E.2d 1256. *See also State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become

prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 64.

{¶84} We have already determined herein that Murphy's claims under items one, two, three, and four lack merit and thus do not constitute error. "[W]here it is found that the trial court did not err, cumulative error is simply inapplicable." *Id.* at ¶ 66.

(ECF Doc. 7-1, pp. 156-58 (emphasis added); *see id*. at pp. 141-46, 152-56 (finding no merit to the claims that the trial court erred by admitting the contested evidence).)

The Eighth District found that counsel's allegedly deficit performance did not result in cumulative errors that deprived Petitioner of a fair trial, citing only state law on cumulative error. Since the state court did not expressly address Petitioner's federal ineffective assistance of counsel claim here, the question thus becomes whether AEDPA deference still applies. In making this determination, the Court applies the *Harrington* presumption. *See Johnson v. Williams,* 568 U.S. 289, 293 (2013) (finding *Harrington* applies where "the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding.") The Court "must presume, subject to rebuttal, that the federal claim was adjudicated on the merits by the state court." *Olson v. Little,* 604 F. App'x 387, 390 (6th Cir. 2015) (citing *Johnson,* 568 U.S. at 293); *see Stermer*, 959 F.3d at 722.

The undersigned finds the *Harrington* presumption has not been rebutted here. The Eighth District prefaced its cumulative error analysis with a recitation of the *Strickland* standard, noting that Petitioner had to show that, "but for counsel's errors, the result of trial would have been different." (ECF Doc. 7-1, p. 156 (citing *State v. Dues*, 2014-Ohio-5276, ¶ 57 (Ohio Ct. App. Nov. 26, 2014) (citing *Strickland*, 466 U.S. 668)).) Further, Petitioner makes no argument that the state courts overlooked his federal ineffective assistance of counsel claim or that AEDPA deference should not apply. In the absence of any such argument, and as the state court appears

39

to have considered the ineffective assistance of counsel claim under the federal standard, there is no "reason to think some other explanation for the state court's decision is more likely." *Stermer*, 959 F.3d at 722 (citing *Harrington*, 562 U.S. at 99-100). The undersigned therefore finds that AEDPA deference applies and turns to the question of "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard" despite failing to object to the doctor's testimony, the pornography evidence, and the polygraph evidence. *Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).

The state court essentially found, under a cumulative error analysis, that Petitioner could not demonstrate that he was prejudiced under *Strickland* by any deficient performance of his trial counsel in failing to object to specific evidence because the same court had already found the allegedly objectionable evidence was properly admitted. (ECF Doc. 7-1, pp. 157-58; *see id*. at pp. 144 ("We find that Dr. McPherson's testimony was admissible"), 156 ("We find that the admission of the [polygraph and pornography evidence] did not constitute a violation of Evid. R. 607(A)).) Mr. Murphy has not demonstrated, or even directly argued, that the state court's disposition of his ineffective assistance of counsel claim was contrary to or an unreasonable application of federal law, focusing his arguments on the underlying admission of the evidence. (*See* ECF Doc. 2, pp. 8-9; ECF Doc. 10, pp. 9-14.) But a "state appellate court's interpretation of its own law and evidentiary rules, '. . . binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)); *see also Small v. Brigano*, 134 F. App'x 931, 936 (6th Cir. 2005) (stating that habeas courts presume that Ohio state courts correctly interpret Ohio law in their evidentiary rulings). It is only "[w]hen an evidentiary ruling

is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Mr. Murphy generally asserts that he was denied a fair trial due to the admission of the doctor's testimony, the pornography evidence, and the polygraph test evidence (*see* ECF Doc. 10, pp. 10-14), but he does not argue that admission of this evidence was "so egregious that it result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. Regardless, the undersigned need not reach this question, as the allegedly improper evidence is solely before the Court in the context of an ineffective assistance of counsel claim. Under the standard for analyzing ineffective assistance of counsel in the habeas context, the question is not whether the contested evidence was properly admitted, or even "whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).

Given the Eighth District's findings that the contested evidence was properly admitted, and the presumption that this decision was correct, *see Brigano*, 134 F. App'x at 936, the undersigned concludes that there is a least a "reasonable argument" that trial counsel's decision not to object to the doctor's testimony, the pornography evidence, and the polygraph test evidence satisfied *Strickland*'s deferential standard and did not prejudice Petitioner. *See Powels v. Curtin*, No. 12-CV-10775, 2013 WL 5719119, at *33 (E.D. Mich. Oct. 21, 2013) (denying petitioner's ineffective assistance of counsel claim based on a failure to object to certain evidence where the state court found the evidence properly admitted under state law).

### 3. Argument that Trial Counsel was Ineffective for Failing to Request Redaction of the Police Interrogation Video is Without Merit

The Eighth District Court of Appeals addressed Mr. Murphy's claim that trial counsel was deficient for failing to object to or redact the interrogation video as follows:

41

{¶85} As far as Murphy's statement to police is concerned,

> A statement made by an accused in the course of a custodial interrogation is admissible at trial only upon proof that the accused was advised of his constitutional rights and that the accused voluntarily, knowingly, and intelligently waived those rights. *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459 (1990), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). *See also State v. Hamilton*, Clermont App. No. CA2001-04-044, 2002-Ohio-560.

*State v. Ogletree*, 8th Dist. Cuyahoga No. 84446, 2004-Ohio-6297, ¶ 56.

{¶86} According to the videotaped interview, Det. Adkins advised Murphy of his *Miranda* rights:

> Det. Adkins: Okay. Since this is a criminal investigation, I do have to advise you of your rights. So you can read these, and I'm going to read them to you as well. You have the right to remain silent. Anything you say can and will be used against you in court.
>
> You have the right to consult with a lawyer before answering any questions and to have a lawyer with you during any questioning. If you cannot afford a lawyer, one will be provided for you free of cost if you want one. On this side it's asking do you understand your rights as I've explained them. So if you could just write yes or no and initial next to it if you understand your rights. Okay. And then on the next line it asks, are you willing to talk with officers without consulting a lawyer or having a lawyer present with you, and you're writing yes?
>
> Murphy: Yes.
>
> Det. Adkins: Okay. Here I'm asking for you to sign this piece of paper. This is just stating that you've received — I'm sorry — you're not going to get a copy of this. That I've read your rights to you, okay, and that you understand them, and at any point during this interview if you choose not to answer any more questions, let me know, and we'll stop talking.
>
> Murphy: Okay.
>
> Det. Adkins: Okay? So just because you're signing it doesn't mean you have to keep talking the whole time. Now, do you understand why you're here?
>
> Murphy: Yeah. I don't know the whole story but —

(Tr. 571-572.)

{¶87} As the state emphasizes, defense counsel stated that the parties "discussed the exhibits in chambers, and [counsel has] no objection in the redacted form on the ones that we identified." (Tr. 647.) The video disk, exhibit No. 20, was not one of the exhibits the parties agreed to submit in redacted form.

{¶88} The record also reflects that defense counsel attempted to demonstrate bias by eliciting testimony from Det. Adkins that she obtained a warrant for Murphy's arrest after she concluded the interviews with Doe and Doe's mother. Det. Adkins responded that she wanted to ensure the warrant was in place when Murphy arrived for his interview the next day. The detective expressed concern that Murphy might not show up and he was still in contact with the family in spite of the no contact advisement.

{¶89} The video also contained, for example, potentially exonerating statements by Murphy explaining possible reasons why Doe was making the allegations. We do not find that Murphy has overcome the presumption that defense counsel actions "'might be considered sound trial strategy.'" *Strickland,* 466 U.S. 668, at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, quoting *Michel,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶90} The eighth assignment of error is overruled.

(ECF Doc. 7-1, pp. 157-60.)

Mr. Murphy's arguments before this Court focus on what he considers the prejudicial elements of the interrogation video, arguing that it was error for trial counsel to fail to object or request a redaction because the video was so prejudicial.  (ECF Doc. 10, pp. 14-16.)  However, he has not argued or shown that the court of appeals's determination—that trial counsel's actions "might be considered sound trial strategy" considering the total contents of the interrogation video—was contrary to or an unreasonable application of *Strickland*.  He also has not shown that the court of appeals's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).

In finding that trial counsel's decision to allow the jury to view the interrogation video "might be considered sound trial strategy," the Eighth District first noted that the interrogation

video was admissible under Ohio law because Mr. Murphy had been advised of his rights and waived them.  The court further found that the interrogation video contained potentially exonerating statements by Mr. Murphy, in addition to the evidence Mr. Murphy claimed was problematic (*see, e.g.,* ECF Doc. 7-4, pp. 169 (Tr. 592:1-8), 172 (Tr. 595:18-25), 175-79 (Tr. 598:7-602:25), 181 (Tr. 604:6-24), 185 (Tr. 608:18-25), 189-90 (Tr. 612:19-613:2)) and noted that Mr. Murphy's counsel attempted to establish a bias when cross-examining the interrogating officer at trial (*see id.* at pp. 208-10 (Tr. 631:7-633:10)).

Respondent points out that Mr. Murphy made potentially exonerating statements in response to the questions he now argues his counsel should have redacted, and argues that the proposed redactions would have rendered those "favorable answers nonsensical."  (ECF Doc. 7, p. 45.)  The undersigned agrees.  Given Mr. Murphy's potentially exonerating statements in the interrogation video, the undersigned concludes that there is at least a "reasonable argument" that trial counsel's decision not to object or seek redactions to the interrogation video fell within the wide range of reasonable professional assistance that is permissible under *Strickland*.

Accordingly, considering the double layer of deference required by AEDPA and Mr. Murphy's failure to show that the state court of appeals's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, the undersigned recommends that the Court **DENY** Ground Three of the Petition.

## E.    Ground Four

In Ground Four, Mr. Murphy argues that the State withheld evidence that the victim recanted her rape allegations before trial and that the decision of the Eighth District Court of Appeals on the consolidated appeal—which affirmed the trial court's denial of his motion for a

new trial and petitions for post-conviction relief—was contrary to, or unreasonably applied the U.S. Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (*See* ECF Doc. 1, p. 10; ECF Doc. 2, pp. 10-12.) Respondent responds that Ground Four is not cognizable because federal habeas relief does not lie for errors in state post-conviction relief proceedings. (ECF Doc. 7, pp. 51-54.) Alternately, Respondent asserts that the *Brady* claim in Ground Four is without merit. (*Id*. at pp. 54-61.) Petitioner replies, without citing any legal support, that he is not foreclosed from raising constitutional deficiencies in his post-conviction proceedings if he demonstrates an underlying *Brady* violation occurred. (ECF Doc. 10, p. 19.) He also further argues the merits of his *Brady* claim. (*Id*. at pp. 19-22.) For the reasons explained below, the undersigned concludes that the claim in Ground Four is not cognizable on federal habeas review.

As an initial matter, to the extent Mr. Murphy alleges the appellate court erred under Ohio law, his claims are not cognizable in this proceeding. Mr. Murphy contends that the state courts should have granted him a hearing so the trial court could determine whether his new evidence merited granting a new trial and suggests that not doing so violated provisions of the Ohio revised code and Ohio case law. (*See* ECF Doc. 2, pp. 10-11; ECF Doc. 10, pp. 20, 22.) However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

45

Mr. Murphy asserts the Eighth District's decision rejecting his requests for a new trial and other post-conviction relief violated his constitutional due process rights.  (ECF Doc. 2, p. 11 (asserting the appellate court "wholly overlooked the prosecutor's duties pursuant to [*Brady v. Maryland*], and utterly misread the law and rules that govern litigation of post-conviction motions.").)  He further asserts that "Ohio law regarding post-conviction, or at least the construction reflected in the instant matter, failed to provide adequate relief when a defendant's rights are violated in contravention of [*Brady*] because it unconstitutionally shifts the burden to the defendant."  (*Id.* at p. 12; *see* ECF Doc. 10, pp. 20-21.)  Respondent argues that these claims are not cognizable on federal habeas review because they are based on alleged errors in state post-conviction proceedings.  (ECF Doc. 7, pp. 51-54.)

 "[T]he Sixth Circuit has consistently held that errors in [state] post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)[4] and *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002)); *see Brown El v. Warden, Warren Corr. Inst.*, No. 18-3657, 2018 WL 6982323, at *3 (6th Cir. Dec. 3, 2018) ("[I]nfirmities in state post-conviction proceedings are not cognizable in federal habeas proceedings[.]") (citing *Kirby* and *Cress*).  In support of these holdings, the Sixth Circuit explained:

> We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this avenue of relief, and

---

[4] The Sixth Circuit held in *Pudelski v. Wilson*, 576 F.3d 595 (6th Cir. 2009), that the rule in *Kirby* was not applicable where a motion for new trial was filed before the direct appeal, and was reviewed by the state court of appeals in that direct appeal.  *See id.* at 610.  That exception is not appliable here, where Petitioner filed his direct appeal in 2018 but did not seek leave to file a motion for a new trial until 2021.  (ECF Doc. 7-1, pp. 29, 349.)

> when they do, the fundamental fairness mandated by the Due Process Clause does
> not require that the State supply a lawyer as well. (citation omitted)). A due process
> claim related to collateral post-conviction proceedings, even if resolved in a
> petitioner's favor, would not "result [in]... release or a reduction in...time to be
> served or in any other way affect his detention because we would not be reviewing
> any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though
> the ultimate goal in" a case alleging post-conviction error "is release from
> confinement, the result of habeas review of the specific issue[ ]...is not in any way
> related to the confinement. *Id*. at 248.

484 F.3d at 853 (alterations in original); *see also Leonard v. Warden, Ohio State Penitentiary*,

846 F.3d 832, 854-55 (6th Cir. 2017) (declining to revisit the issue).

Here, Mr. Murphy claims Ohio's post-conviction proceedings are unconstitutional as

applied to him.  (ECF Doc. 2, pp. 10-12; ECF Doc. 10, pp. 19-22.)  Specifically, he contends that

it was improper for the state courts to deny his petitions for post-conviction relief based on a

finding that he knew of, or could have discovered evidence sooner that M.S. was questioning her

story, because the State "hid" evidence that M.S. attempted to recant before trial.  (ECF Doc. 2,

pp. 11-12; ECF Doc. 10, pp. 19-21.)  Regardless of whether this argument is supported by the

relevant evidence, the claims in Ground Four remain non-cognizable on habeas review because

even a finding in Petitioner's favor "would not 'result [in] . . . release or a reduction in . . . time

to be served or in any other way affect his detention because we would not be reviewing any

matter directly pertaining to his detention.'"  *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at

247) (alteration in original).  At best, Mr. Murphy might be entitled to argue the merits of his

*Brady* claim to the state courts at a hearing for a new trial.  That is not the sort of relief a federal

writ of habeas corpus is designed to provide.  *See id*. ("[C]laims challenging state collateral post-

conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. §

2254, because the essence of habeas corpus is an attack by a person in custody upon the legality

of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.") (internal quotations and quotation marks omitted).

Other district courts in Ohio have similarly found claims based on errors in Ohio's post-conviction relief procedures to be non-cognizable on federal habeas review. *See, e.g., Black v. Warden, Pickaway Corr. Inst.*, No. 2:22-CV-3087, 2023 WL 8811032, at *12 (S.D. Ohio Dec. 20, 2023), *report and recommendation adopted* 2024 WL 1735073 (S.D. Ohio Apr. 23, 2024) (finding a petitioner's claim that the trial court abused its discretion when it denied his post-conviction petition based on the prosecutor withholding exculpatory evidence was not cognizable because it challenged a collateral proceeding rather than the underlying conviction); *Mack v. Bradshaw*, No. 1:04 CV 829, 2021 WL 4477882, at *117 (N.D. Ohio Sept. 30, 2021), *aff'd* 88 F.4th 1147 (6th Cir. 2023) (rejecting a claim that Ohio's post-conviction relief scheme is unconstitutional as not cognizable on federal habeas review); *Zich v. Haviland*, No. 3:18-CV-2515, 2020 WL 7237289, at *7 (N.D. Ohio Dec. 9, 2020) ("Whatever infirmities Ohio's post-conviction procedure might have, a § 2254 petition "is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration."); *Broom v. Jenkins*, No. 1:10 CV 2058, 2019 WL 1299846, at *34 (N.D. Ohio Mar. 21, 2019), *aff'd sub nom. Broom v. Shoop*, 963 F.3d 500 (6th Cir. 2020) (finding a claim that the Ohio courts denied petitioner due process by failing to provide an adequate corrective process through its scheme for post-conviction relief to be non-cognizable).

In light of the foregoing, the undersigned concludes that Ground Four is not cognizable on federal habeas review. Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four with prejudice as not cognizable.

## IV.     Recommendation

For all the reasons set forth above, the undersigned recommends that the Court **DENY** Grounds One and Three on the merits, **DISMISS** Ground Two with prejudice as procedurally defaulted, and **DISMISS** Ground Four with prejudice as not cognizable.

Dated:  November 19, 2025

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).